UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAY FURMAN,

Plaintiff,

– against –

ROBERT ENSLEIN, JR.,

Defendant.

11 Civ. 3793 (TPG)

**OPINION**

ROBERT ENSLEIN, JR.,

Third-Party Plaintiff,

– against –

PINNACLE WINE VAULT, LLC,

Third-Party Defendant.

Plaintiff Jay Furman ("Furman"), a New York resident, brings this diversity action against defendant Robert Enslein, Jr. ("Enslein"), a Connecticut resident, to recover sums owed to him under an agreement between the parties and third party Erik Ekstein ("Ekstein").

Plaintiff now moves for summary judgment on his sole claim for breach of contract. Defendant opposes that motion and cross-moves to dismiss the complaint for failure to join an indispensable party.

Plaintiff's motion for summary judgment is granted, and defendant's cross-motion is denied.

**Facts**

The following facts are not in dispute unless otherwise stated.

In November 2006, Furman, Enslein, and Ekstein signed an Operating Agreement making them the sole members of Pinnacle Wine Vault LLC ("Pinnacle"), a Delaware company with its principal place of business in New York. By virtue of the agreement and in recognition of their capital contributions to the entity, the members received equity interests in Pinnacle. Furman received a 31.333% membership interest, while Enslein and Ekstein each received at 34.333% interest.

By 2009, Pinnacle needed more capital to fund its operations. On May 1, 2009, Furman sent a proposed Letter Agreement to Enslein and Ekstein, wherein Furman offered to infuse Pinnacle with $400,000 in exchange for certain promises by Enslein and Ekstein. The Letter Agreement provides:

> Reference is made to that certain Amended and restated Operating Agreement of the Company dated as of November 21, 2006 (as amended and/or supplemented through the date hereof, collectively, the "Agreement"). Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Agreement.
>
> I intend on contributing Four Hundred Thousand and 00/100 Dollars ($400,000) (the "Contribution") to the capital of the Company in the form of an additional capital contribution and/or a loan to the Company. In connection therewith and notwithstanding anything to the contrary set forth in the Agreement, each of you hereby agree to be personally liable for and to re-pay your proportionate share of the Contribution in its entirety, together with accrued and unpaid Preferred Return thereon (or interest, as the case may be) (such principal together

> with Preferred Return and/or interest, collectively, the "Total Contribution"), within fifteen (15) days following my demand. Notwithstanding the foregoing and anything to the contrary set forth in the Agreement, your proportionate share of the Contribution shall not be due until the earlier of (x) one year from the date first set forth above or (y) the date upon which the Company shall be deemed by me to be illiquid. Unless I elect otherwise, the Total Contribution may not be repaid except out of profits which are generated by the Company after the date hereof.
>
> This letter agreement (i) shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, (ii) shall be governed by, and construed in accordance with, the laws of the State of Delaware, (iii) together with the Agreement, represents the entire and integrated agreement among the parties hereto with respect to the subject matter covered hereby, (iv) may not be changed, waived, discharged or terminated orally, but only by a writing signed by the party against whom enforcement is sought, (v) shall not be strictly construed against any party hereto, all parties agreeing that they have participated fully and equally in the preparation of this agreement, (vi) may be executed in two or more counterparts, each of which shall be deemed an original, and all such counterparts shall together constitute one and the same instrument and (vii) may be executed in facsimile signatures (or by copies of physically signed documents exchanged via email attachments in PDF format or equivalent).
>
> Please indicate your agreement to the above by executing this letter agreement below. Should you have any questions, please do not hesitate to call me.

Ekstein and Enslein duly executed the Letter Agreement upon receiving it, and Furman contributed the $400,000.

Subsequently, Furman determined that Pinnacle was illiquid and that the contribution would not be repaid out of Pinnacle's profits. On September 28, 2010, Furman made a demand for repayment in a letter addressed to Enslein and Ekstein. That letter stated:

> Reference is made to that certain letter agreement, dated as of

> May 1, 2009, by and among the parties hereto (the "Agreement") made in connection with the Company. Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Agreement.
>
> Pursuant to the Agreement, demand is hereby made for you to repay my four hundred thousand ($400,000) dollar "Contribution"—as such term is defined and described in the Agreement. As the Company does not have the funds to repay this amount, this must be repaid with your personal funds. Please remit your pro rata share of same to me at the address set forth above within fifteen (15) days following your receipt of this letter.

The present suit is brought against Enslein, who has refused o make payment. The record does not disclose what has happened with regard to Ekstein.

**The Present Motions**

Plaintiff now moves for summary judgment on his breach of contract claim. He seeks $137,332.00, defendant's *pro rata* share of the $400,000 capital contribution with interest. In addition, plaintiff seeks to recover attorneys' fees pursuant to the Operating Agreement between the parties.

Defendant opposes plaintiff's motion on the merits and cross-moves under Fed R. Civ. P. 12(b)(7) to dismiss the complaint for failure to join Ekstein, the other obligor named in the Letter Agreement.

**Discussion**

Defendant's Motion to Dismiss

Under Fed. R. Civ. P. 12(b)(7), an action must be dismissed for failure to join a required party as defined in Rule 19. Rule 19 provides, *inter alia*, that a person is a required party when a judgment rendered in the person's absence

would prejudice that person or the parties, or when a judgment between the parties would be not be adequate in that person's absence. See Fed. R. Civ. P. 19(b). If joinder of a required party is not possible for jurisdictional reasons, "the court must finally determine whether the party is indispensable. If the court determines that a party is indispensable, then the court must dismiss the action…." Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 725 (2d Cir. 2000).

Defendant argues that the Letter Agreement imposes a joint obligation on Ekstein and defendant to repay the debt to plaintiff. He further argues that it would be unjust to continue this breach-of-contract action without joining Ekstein, since in his absence, defendant could be held responsible for the entirety of the debt owed to plaintiff. Adding Ekstein, however, would divest the court of subject matter jurisdiction, since Ekstein is a New York resident. Hence, in defendant's view, Ekstein is an indispensable party who cannot be joined, so the complaint must be dismissed.

But defendant's arguments only holds water if the court accepts his interpretation of the Letter Agreement. Plaintiff, however, contends that the Letter Agreement imposes separate obligations on Ekstein and Enslein to each pay their respective shares. Under plaintiff's interpretation, Furman could collect from Ekstein and/or Enslein separately and sue either individually should they breach the contract. Thus the court must confront a threshold issue of contract interpretation.

Per its terms, the Letter Agreement is governed by Delaware law. "In Delaware, the interpretation of contracts is a matter of law for the court to

determine." Amadeus Global Travel Distrib., S.A. v. Orbitz, LLC, 302 F. Supp. 2d 329, 334 (D. Del. 2004). When making this determination, the court should give clear contractual language its ordinary meaning. See Rhone-Poulenc Basic Chemicals Co. v. American Motorists Ins. Co., 616 A.2d 1192, 1195 (Del. 1992). The parties are bound to the plain meaning of the contract unless an ambiguity inheres in it. See id. But "a contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." Id. at 1196.

As noted above, the parties dispute the meaning of the core provision of the Letter Agreement:

> In connection therewith and notwithstanding anything to the contrary set forth in the Agreement, each of you hereby agree to be personally liable for and to re-pay your proportionate share of the Contribution in its entirety, together with accrued and unpaid Preferred Return thereon (or interest, as the case may be) (such principal together with Preferred Return and/or interest, collectively, the "Total Contribution"), within fifteen (15) days following my demand.

The language of the Letter Agreement plainly imposes separate and parallel obligations on Ekstein and Enslein to repay their "proportionate share of the Contribution in its entirety" within fifteen days of a demand issued in accordance with the conditions set forth elsewhere in the contract. The Letter Agreement evinces no intent to impose joint liability on the obligors for the entire sum. While defendant argues that the clause "in its entirety" creates a joint obligation, the word "its" in that clause obviously refers to the phrase

"proportionate share." That is to say, the Letter Agreement requires each obligor to pay the *entirety of his portion* within the fifteen-day period following Furman's demand.

It follows that Ekstein is not an indispensable party to the present action. The Letter Agreement imposes two distinct obligations on two distinct parties, and Furman may enforce the agreement against either obligor in the event of breach. For reasons not known to the court, Furman opted to sue Enslein alone. But it will not prejudice any party to the contract to issue a judgment in Ekstein's absence, since the determination of this case will not alter Ekstein's obligations under the Letter Agreement and will not expose either Ekstein or Enslein to additional liability beyond that contemplated by the Letter Agreement. Thus, defendant's motion to dismiss is denied.

Plaintiff's motion for Summary Judgment

Summary judgment may be granted if there is no genuine issue as to any material fact, such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant has the burden of showing that no genuine factual dispute exists. Id. However, in determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. Id. at 249.

Plaintiff has asserted a breach of contract claim under Delaware law. To succeed on summary judgment, he must demonstrate that no genuine issue of material fact remains for trial with respect to any element of his claim. "Under Delaware law, the elements of a breach of contract claim are: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) resulting damage to the plaintiffs." Greenstar, LLC v. Heller, 814 F. Supp. 2d 444, 450 (D. Del. 2011).

The Letter Agreement clearly constitutes a binding contract between the parties. Defendant does not argue to the contrary. He also concedes that plaintiff paid the $400,000 contribution and that he failed to repay his share after plaintiff's demand. Thus, the only question before the court is whether defendant's actions constituted a breach of the Letter Agreement.

Defendant argues that two issues of fact preclude summary judgment (Def. Mem. p. 13): "(1) whether plaintiff actually required both [Enslein and Ekstein] to pay back the loan; and (2) whether the loan (in whole or in part) was converted into member equity."

The first alleged issue relates to whether Enslein and Ekstein had a joint obligation to repay the entire contribution. But the court dispensed with that issue in the preceding section. Thus there remains only the question of whether defendant discharged his obligation by giving Furman additional membership equity in Pinnacle.

Defendant claims his contractual debt to Furman was converted to equity in 2010. To support this assertion, he offers an undated letter from an

accountant to Noble House Wines. Attached to the letter is an edited 2009 financial statement for Pinnacle, which lists in summary fashion the assets and liabilities of the company. In relevant part, the letter states:

> As you may know, Pinnacle Wine Vault is a privately held company and its sole source of capital is obtained from its members. In the past, that capital has been classified under debt on the balance sheet and has recently been reclassified to member equity.
>
> I wanted to bring this to your attention, as it is a significant change in the presentation that clarifies sources of funds and hopefully will change our financial standing with your company.

But this letter does not speak with any specificity to the Letter Agreement or the particular $400,000 capital contribution at issue. Moreover, the letter discusses how an unspecified amount of debt was "reclassified" as member equity. The use of this term suggests that the conversion was a mere matter of bookkeeping, not a substantive repayment of a liability. Finally, defendant's position is contradicted by Pinnacle's federal tax forms from the years 2009 and 2010, wherein defendant's 34.333% membership interest remains unchanged. Thus, there is no basis for the defense that the contribution was converted into equity to relieve Enslein of his obligation to repay plaintiff.

The evidence establishes beyond question that defendant breached the contract as properly construed. The record demonstrates that plaintiff abided by the terms of the Letter Agreement in seeking repayment from defendant. Plaintiff could demand the *pro rata* repayment of the contribution only after "the earlier of (x) one year from the date first set forth above or (y) the date upon which the Company shall be deemed by me to be illiquid." Plaintiff made

his demand more than a year after the Letter Agreement was executed. Also plaintiff's letter stated in substance that he deemed Pinnacle to be illiquid. Thus plaintiff made a proper demand and Enslein refused to comply. Plaintiff has shown his entitlement to summary judgment for breach of contract.

Attorneys' Fees

Lastly, plaintiff seeks to recover his attorneys' fees pursuant to Section 17.11 of the Operating Agreement, which provides for the payment of attorneys' fees when a member of Pinnacle prevails in litigation intended to secure a "remedy related to" a breach of the Operating Agreement. Defendant argues that Section 17.11 does not apply, because the Letter Agreement is not part of the Operating Agreement. However, the first sentence of the Letter Agreement states that "[r]eference is made to that…Operating Agreement of the Company…." Elsewhere, the Letter Agreement states that it, "together with the [Operating] Agreement, represents the entire and integrated agreement among the parties hereto with respect to the subject matter covered hereby…." In short, the Letter Agreement plainly incorporates the Operating Agreement by reference, such that a remedy for breach of the Letter Agreement is a remedy "related to" the Operating Agreement. Accordingly, plaintiff is entitled to attorneys' fees.

Plaintiff has not requested a definite amount of fees. The court will ascertain the amount to be awarded in further proceedings.

**Conclusion**

For the foregoing reason, defendant's motion to dismiss is denied, and

plaintiff's motion for summary judgment is granted. This opinion resolves docket items numbers 13 and 17.

SO ORDERED.

Dated: New York, New York
August 20, 2012

Thomas P. Griesa
U.S.D.J.

